UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O' JS-6**

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-06597-CAS-MAAx | Date | August 6, 2026 |
| Title | Sharon Hoffman et al. v. Goli Nutrition, Inc. et al. | | |

| | |
|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER |

| | | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) - DEFENDANT DLA PIPER LLP (US)'S MOTION FOR SUMMARY JUDGMENT (Dkt. 488, filed on June 8, 2026)

DEFENDANT DLA PIPER LLP (US)'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11 (Dkt. 22, filed on October 31, 2023)

## I. INTRODUCTION

The background of this case is known to the parties and described in the Court's January 2, 2026 order. Dkt. 362.

On October 31, 2025, plaintiffs Sharon and Odelya Hoffman (the "Hoffmans"), RGL Holdings LLC ("RGL Holdings"), RGL Management LLC ("RGL Management"), and Vitamin Friends LLC ("Vitamin Friends") filed their operative third amended complaint ("TAC"). The TAC alleges eight claims for relief: (1) Vitamin Friends brought claims under the Defend Trade Secrets Act ("DTSA") against the Goli defendants,[1] the VMG defendants,[2] and MeriCal Inc.; (2) Vitamin Friends brought claims

[1] The Goli defendants refers to Goli Nutrition, Inc. (Canada), Goli Nutrition, Inc. (Delaware), 12416913 Canada Inc., Deepak Agarwal ("Agarwal"), Michael Bitensky, and Randy Bitensky. Goli Nutrition, Inc. (Canada) and Goli Nutrition, Inc. (Delaware) are referred to, collectively, as "Goli Nutrition."

[2] The VMG defendants refers to VMG Partners, LLC, VMG Partners Mentors Circle IV L.P., and VMG Partners IV, LP.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O' JS-6**

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-06597-CAS-MAAx | Date | August 6, 2026 |
| Title | Sharon Hoffman et al. v. Goli Nutrition, Inc. et al. | | |

for fraudulent misrepresentation against the Goli defendants and the VMG defendants; (3) Vitamin Friends brought claims for breaches of fiduciary duties against Goli Nutrition and the VMG defendants; (4) RGL Holdings brought claims for violation of RICO against Wu and Marshall; (5) Sharon Hoffman brought claims for legal malpractice against DLA Piper LLP (US); (6) Sharon Hoffman brought claims for breach of fiduciary duty against DLA; (7) Odelya Hoffman brought a claim for intentional infliction of emotional distress against the Goli defendants and the VMG defendants; and (8) Vitamin Friends brought a claim for conversion against Goli Nutrition. Dkt. 312 ("TAC").

On November 14, 2025, the VMG parties[3] filed a motion to dismiss plaintiffs' first, second, third, fourth, and seventh claims in plaintiffs' Third Amended Complaint. Dkt. 316. On November 17, 2025, defendant Roger Tyre ("Tyre") filed a notice of joinder with respect to the VMG parties' motion to dismiss plaintiffs' TAC. Dkt. 318.

On November 24, 2025, the VMG parties filed a motion for summary judgment as to plaintiffs' DTSA claim against them. Dkt. 326. On November 26, 2025, Meri Cal filed a notice of joinder in the VMG parties' motion for summary judgment. Dkt. 329.

On January 2, 2026, the Court granted the VMG parties' motion for summary judgment on Vitamin Friends' DTSA claim. Dkt. 362 ("January 2, 2026 Order") at 27. The Court granted summary judgment in favor of MeriCal, LLC ("MeriCal") based on its joinder in the VMG parties' motion for summary judgment. Id. The Court denied as moot the VMG parties' motion to dismiss Vitamin Friends' DTSA claim. Id. The Court otherwise granted the VMG parties' motion to dismiss, with prejudice.[4] Id.

On March 1, 2026, Vitamin Friends, the individual Goli defendants (i.e., Deepak Agarwal, Michael Bitensky, and Randy Bitensky), and Tyre stipulated to grant the

[3] The "VMG parties" refers to VMG Partners IV, L.P., VMG Partners Mentors Circle IV, L.P., VMG Partners II, LLC, Wayne Wu, and Jonathan Marshall.

[4] The following claims in plaintiffs' operative TAC remain: Fifth claim for legal malpractice brought by Sharon Hoffman against DLA Piper; sixth claim for breach of fiduciary duty brought by Sharon Hoffman against DLA Piper; and eighth claim for conversion by Vitamin Friends against Goli Nutrition (i.e., Goli Nutrition, Inc. (Canada) and Goli Nutrition, Inc. (Delaware)). The following defendants remain in the case: DLA Piper and Goli Nutrition.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O' JS-6**

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-06597-CAS-MAAx | Date | August 6, 2026 |
| Title | Sharon Hoffman et al. v. Goli Nutrition, Inc. et al. | | |

individual Goli defendants and Tyre summary judgment on Vitamin Friends' DTSA claim for the same reasons the Court stated in its January 2, 2026 Order. Dkt. 403. On March 3, 2026, the Court granted the parties' stipulation. Dkt. 405 ("March 3, 2026 Order") at 3. Pursuant to the stipulation, the Court also entered judgment in this action in favor of Deepak Agarwal, Michael Bitensky, and Randy Bitensky, and Roger Tyre. Id. at 3.

On March 6, 2026, the VMG parties, the individual Goli defendants, Tyre, and MeriCal (collectively, the "Judgment Defendants") filed a motion for entry of judgment in their favor, pursuant to Rule 54(b), on all claims asserted against them. Dkt. 407. On April 13, 2026, the Court granted the motion. Dkt. 469.

On March 30, 2026, plaintiffs appealed the Court's judgment entered pursuant to the March 3, 2026 Order to the Ninth Circuit. Dkt. 443. On March 30, 2026, the Ninth Circuit set a briefing schedule for plaintiffs' appeal under which plaintiffs' opening briefs would be due on June 22, 2026, and respondents' answering briefs would be due on July 22, 2026. Dkt. 444.

On April 15, 2026, plaintiffs and the Goli defendants stipulated to voluntarily dismiss their claims against the Goli defendants—that is, Goli Nutrition, Inc. (Canada), Goli Nutrition, Inc. (Delaware), 12416913 Canada Inc., Deepak Agarwal, Michael Bitensky, and Randy Bitensky—with prejudice. Dkt. 475.[5] The same day, the Court granted the parties' stipulation. Dkt. 476.

On June 8, 2026, DLA filed the instant motion for summary judgment as to plaintiff Sharon Hoffman's legal malpractice claim and breach of fiduciary duty claim against DLA. Dkt. 488 ("Mot."). DLA concurrently filed a statement of uncontroverted facts ("DSUF"), dkt. 488-1, as well as a declaration from Daniel Nowicki and exhibits, dkts. 489, 489-1 to 23.

On June 15, 2026, plaintiffs filed an opposition to the VMG parties' instant motions. Dkt. 496 ("Opp."). Plaintiffs concurrently filed a statement of genuine disputes

[5] The parties stipulated and agreed that "each party shall bear its own attorneys' fees, costs, and litigation expenses in relation to this action[.]" Dkt. 475 at 1.

of fact and plaintiffs' statement of additional uncontroverted facts, dkt. 496-1, and several declarations. Dkt. 496-3 to 6.

On June 22, 2026, DLA filed a reply. Dkt. 497 ("Reply"). DLA concurrently filed a response to plaintiffs' statement of genuine disputes and a response to plaintiffs' statement of additional uncontroverted facts. Dkt. 497-1. The response covers the 66 facts asserted by DLA, Dkt. 497-1 at 2-64 ("Resp. 1"), and the 26 additional facts independently asserted by plaintiffs, Dkt. 497-1 at 65-90 ("Resp. 2").

On July 6, 2026, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

Unless otherwise noted, the Court references only facts that are uncontroverted and to which evidentiary objections, if any, have been overruled.

### A. Prior Agreements Between Better Nutritionals and Goli

Better Nutritionals LLC ("Better Nutritionals") was a gummy dietary supplement manufacturing company founded in 2015 by Sharon Hoffman ("Hoffman"). Resp. 1 ¶ 1.

Better Nutritionals' largest customer as of March 20, 2020 was Goli Nutrition, Inc. ("Goli"), which represented approximately 95% of Better Nutritionals' manufacturing volume at that time. Id. ¶ 2.

DLA was not involved in the negotiation of a January 22, 2020 agreement between Better Nutritionals, Goli, and Atos IT Solutions and Services. Id. ¶ 3.

DLA was not involved in the negotiation of a March 30, 2020 lease agreement between Goli and Caprock for the facility in Norco, California. Id. ¶ 4.

On January 31, 2020, Goli sent Sharon Hoffman a draft "binding letter of intent" ("LOI") that "represent[ed] the understanding of the parties with respect to certain relevant matters related to" a transaction in which Goli and Better Nutritionals would invest in each other (hereinafter, the "stock-swap transaction"). Id. ¶ 5.

On March 24, 2020, the LOI was executed by Sharon Hoffman as CEO of Better Nutritionals and Michael Bitensky as President of Goli. Id. ¶ 6.

The LOI provided that the "terms of the transaction" would be later "memorialized in the Definitive Agreements which shall be negotiated in good faith between the parties." Id. ¶ 7.

The LOI provided that as part of the future "transaction," Sharon Hoffman would receive 3% of Goli's outstanding shares in exchange for Goli receiving 25% of Better Nutritionals' outstanding shares. Id. ¶ 8.

"Agarwal and [Goli's in-house counsel Randy] Bitensky presented their proposal as 'take it or leave it'" to Sharon Hoffman, saying that "if the Hoffmans[] refused to agree, they would take all of the Goli business elsewhere." Id. ¶ 9.

Sharon Hoffman stated that he agreed to the LOI because he felt he had "no choice from a business perspective" but to agree to Goli's terms to continue the beneficial relationship with Better Nutritionals' "largest customer." Id. ¶ 10.

### B. DLA Engagement Agreement and Conflict Waiver

On December 9, 2019, Sharon Hoffman signed an engagement agreement with DLA on behalf of himself and Better Nutritionals. Id. ¶ 12.

The parties dispute whether Sharon Hoffman retained DLA to represent him and Better Nutritionals solely with respect to a dispute with their former business partner in December 2019, or whether DLA was retained to and did represent Hoffman and Better Nutritionals in other matters. Resp 1 ¶ 11.

The parties' written engagement agreement provided "terms and conditions under which DLA Piper LLP (US) ('the Firm') [would] act as your [Sharon Hoffman's and Better Nutritionals'] counsel for all existing and future matters." Id. ¶ 13.

The "Conflicts of Interest" provision of the agreement stated that DLA "may, now or in the future, represent other persons or entities on matters adverse to you … including, without limitation, in commercial transactions … other than those [matters] for which the Firm had been or is then engaged by you," and that such "Allowed Adverse Representation" "does not breach any duty that [DLA] owes to you." Id. ¶ 14; Dkt. 494-8 at 14.

The "Termination" provision of the agreement states that "[DLA's] representation of you with respect to a particular matter will terminate upon conclusion of the Firm 's active involvement in the matter (even if the Firm continues active involvement in other matters on your behalf)." Dkt. 494-8 at 14.

The parties dispute whether and when DLA's representation of Hoffman and Better Nutritionals concluded. Resp. 2 ¶ 11. Plaintiffs argue that "[i]n the absence of a matter-specific engagement letter and a written disengagement letter, there is a genuine factual dispute as to when DLA's representation concluded." Id.

DLA first became aware of the stock-swap transaction on October 22, 2020, when Agarwal added then-DLA partner Safraz Ishmael to an email chain regarding the stock-swap transaction with Sharon Hoffman and others. Resp. 1 ¶ 16.

On October 22, 2020, Ishmael advised Sharon Hoffman that "because the firm represents both [Better Nutritionals] and Goli, [DLA will] have to figure out conflicts and waivers, if possible, depending on the structure of the deal. I will run this by our conflicts team now." Id. ¶ 17.

On October 28, 2020, Ishmael sent Sharon Hoffman an email with the conflict waiver, stating: "As we discussed, below is the conflict waiver agreement. Please review, and if everything looks okay, you can just respond to this email with 'I agree.'" Id. ¶ 18.

The conflict waiver that Ishmael sent to Sharon Hoffman on October 28, 2020 stated that Sharon Hoffman had asked DLA to represent both him and Better Nutritionals in the "Goli Nutrition/Better Nutritionals Investment." Id. ¶ 19. The conflict waiver also identified the "Counterparty" as "Goli Nutrition Inc., Michael Bitensky, and Deepak Agarwal." Id. ¶ 20. The waiver also disclosed that "DLA Piper represents Counterparty" in "Various Unrelated Matters" and disclosed that DLA "currently represents, in the past has represented and will continue to represent, the Counterparty in connection with Unrelated Matters." Id. ¶ 21-22. The conflict waiver concluded: "Please indicate [your] agreement and consent to the foregoing matters by reply e-mail. If you have any questions, please do not hesitate to contact me." Id. ¶ 23.

On October 28, 2020, Sharon Hoffman responded to the conflict waiver that Ishmael sent on October 28, 2020, stating, "I agree. Thank you." Id. ¶ 24. Hoffman read the waiver and did not consult independent counsel before signing it. Id. ¶¶ 25, 27.

Hoffman contends that although he agreed to the conflict waiver on behalf of himself and Better Nutritionals, the waiver did not provide them with adequate informed consent to the waiver, and that Hoffman did not understand the implications of agreeing to the waiver. See id. ¶¶ 20-27.

**C. The Stock-Swap Agreements**

The stock-swap agreements between Better Nutritionals and Goli were executed on December 10, 2020. Id. ¶ 28.

Sharon Hoffman reviewed all of the stock-swap agreements before he signed them. Id. ¶ 29.

The terms of the stock-swap agreements included provisions which Sharon Hoffman now takes issue with in this action, including provisions identifying the "fair market value" of the exchanged equity interests, provisions identifying certain transactions that required approval from both Sharon Hoffman and Goli, and provisions granting Goli priority and right of first refusal over Better Nutritionals' "applicable production capacity." Id. ¶¶ 32-34.

Hoffman contends that although he reviewed the stock-swap agreements, he did not understand the nature and implications of the stock-swap agreements, and that DLA breached its fiduciary duty to Hoffman and Better Nutritionals by not fully advising Hoffman about his options for making changes with respect to certain material terms in the agreements and by failing to object to certain terms. See id.

**D. Lack of Independent Valuation of the Stocks Exchanged**

PwC was Better Nutritionals' accounting firm. Id. ¶ 35. Sharon Hoffman relied on PwC to advise him on "valuation" and other "accounting" issues relating to the stock-swap transaction. Id. ¶ 36.

Frank Hobmeier of PwC told Sharon Hoffman on December 7, 2020, "that there will need to be some objective and independent confirmation of the value exchange in the respective transactions," and that "the risk of proceeding with the transaction as currently contemplated is that the value of the property transferred is higher than what is contemplated in the transaction documents." Id. ¶ 37.

In response to Hobmeier, Sharon Hoffman requested on December 8, 2020, that "we execute the transaction and do the valuation later," noting several reasons why the valuation of Better Nutritionals "is not so high." Id. ¶ 38.

Sharon Hoffman told Hobmeier on December 8, 2020 that "if we have to do a 3rd party evaluation they will come to the same conclusion, that this was a mutual fair deal." Id. ¶ 39.

Jerami Davidson, an associate at DLA, wrote to Sharon Hoffman on December 8, 2020 that DLA "[was] not [] retained for and will not provide advice regarding the valuation or tax consequences of the [stock-swap transaction]." Id. ¶ 40.

### E. Aftermath of Stock-Swap Transaction

DLA did not perform any legal work for Sharon Hoffman in connection with the stock-swap transaction at any point after 2021. Id. ¶ 41.

DLA's legal work for Better Nutritionals concluded no later than August 15, 2022.[6] Id. ¶ 42.

---

[6] On August 15, 2022, DLA sent Better Nutritionals a "Dis-engagement Letter." Dkt. 494-8 at 3-4. The "Dis-engagement Letter" was addressed to:

> Patrick Morin, Esq.
> Better Nutritionals, LLC
> 3390 Horseless Carriage Drive
> Norco, CA 92860

Id. at 3.
The letter stated in part:

> [P]ursuant to your directions, [DLA's] representation of Better Nutritionals, LLC with respect to the Alarcon v. Better Nutritionals employee lawsuit has terminated, effective May 24, 2022. In accordance with Better Nutritionals' instructions, DLA … has ceased all work on this matter and has transferred the file to the substitute counsel that you have identified. Among other things, this means that the attorney-client relationship between Better Nutritionals and DLA Piper has ended.

Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O' JS-6**

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-06597-CAS-MAAx | Date | August 6, 2026 |
| Title | Sharon Hoffman et al. v. Goli Nutrition, Inc. et al. | | |

In or around August 2021, a dispute arose regarding Better Nutritionals' ability to offer excess manufacturing capacity to other customers. Resp. 2 ¶ 1.

In August 2021, Sharon Hoffman "realized that the stock swap agreement had some problematic provisions in it," Resp. 1 ¶ 43, and "began to appreciate that certain provisions of the stock-swap agreements were operating against [his] interests." Dkt. 496-4, Declaration of Sharon Hoffman ("Hoffman Decl.") ¶ 10. Hoffman then believed that the right of first refusal and approval provisions in the Share Purchase Agreement were "bad for Better Nutritionals," and believed that the approval provision "hamstrung" his ability to sell his shares of Better Nutritionals. Resp. 1 ¶ 44-45.

In February 2022, Sharon Hoffman sought to reverse the stock-swap transaction, in part "because there were provisions in the 2020 contracts that [he] didn't like." Resp. 1 ¶ 46. Sharon Hoffman entered an agreement in March 2022 with Goli that modified the terms of the stock-swap agreements (hereinafter, the "March 2022 Agreement"). Id. ¶ 47.

DLA was not involved in the March 2022 Agreement. Id. ¶ 48.

In the March 2022 Agreement, Sharon Hoffman agreed to delete the "Competing Products" definition in the Share Purchase Agreement and redefine "Competing Products" to mean "(1) apple cider vinegar gummies and (2) ashwagandha gummies." Id. ¶ 50.

Sharon Hoffman agreed to change the definition of "Competing Products" via the March 2022 Agreement "because the definition of 'Competing Products' in the original agreements had been bad for Better Nutritionals." Id. ¶ 51.

As of April 2022, Sharon Hoffman believed that he got "scammed" and "screwed" in the stock-swap transaction, which he believed was "bad." Id. ¶ 52.

---

This "Dis-engagement Letter," on its face, relates to DLA's separate representation of Better Nutritionals and does not relate to DLA's representation of Hoffman in connection with the stock-swap transaction. Id.

Hoffman proffered expert testimony that the stock-swap transaction between Goli and Better Nutritionals is inconsistent with that of arm's-length transactions involving Better Nutritionals and comparable companies. See Resp. 2 ¶¶ 13-18.

Sharon Hoffman "knew before August[] 2022[] what advi[c]e DLA had given [him]" in connection with the stock-swap transaction. Resp. 1 ¶ 53.

On December 20, 2022, Better Nutritionals filed for Chapter 11 bankruptcy. Resp. 1 ¶ 54.

In March 2024, Goli filed for bankruptcy protection in Canada. Id. ¶ 55.

Sharon Hoffman did not sell the Better Nutritionals or Goli stock he retained following the 2020 stock-swap transaction. Id. ¶ 58.

**F. This Lawsuit**

Sharon Hoffman alleges he "relied upon the legal advice of DLA . . . in the negotiation and drafting" of the stock-swap agreements to his detriment, and that, as a result of DLA's conduct, "Better Nutritionals would not have been in the position" it ended up in. Id. ¶ 59.

Sharon Hoffman's counsel advised him on potential claims against DLA based solely on his review of the stock-swap agreements and the communications around the time the agreements were signed. Id. ¶ 60.

According to Sharon Hoffman, had the terms in the stock-swap agreements been changed, Goli would have had to agree to such changes. Id. ¶ 61.

Plaintiffs filed this lawsuit on August 11, 2023. Id. ¶ 62. The only claims alleged against DLA are Sharon Hoffman's legal malpractice and breach of fiduciary duty claims. Id. ¶ 63.

Sharon Hoffman relies on the same allegations in support of both causes of action, i.e., that DLA negligently negotiated the stock-swap transaction by, for example, allowing the approval and right of first refusal provisions to be included in the stock-swap agreements. Id. ¶ 64.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O' JS-6**

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-06597-CAS-MAAx | Date | August 6, 2026 |
| Title | Sharon Hoffman et al. v. Goli Nutrition, Inc. et al. | | |

Sharon Hoffman claims he suffered lost commissions from Better Nutritionals as a result of DLA's conduct. Id. ¶ 65.

Sharon Hoffman claims that, as a result of DLA's conduct, he incurred legal expenses defending himself in other lawsuits. Id. ¶ 66.

Sharon Hoffman also claims that he suffered financial losses as a result of being unable to diversify Better Nutritionals' customer base due to the right-of-first-refusal and related provisions contained in the stock-swap agreements. Resp. 2 ¶ 22.

## III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E.

Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV. DISCUSSION

### A. DLA's Motion for Summary Judgment

DLA moves for summary judgment on Sharon Hoffman's claims for legal malpractice and breach of fiduciary duty against DLA. Mot. at 1. The parties do not dispute that "[t]he only claims alleged against DLA are Sharon Hoffman's legal malpractice and breach of fiduciary duty claims." Resp. 1 ¶ 63.

With respect to his legal malpractice claim, Hoffman alleges that, "[i]n acting as counsel for both Goli, on the one hand, and in certain cases for Sharon Hoffman and in others both for Better Nutritionals and Sharon Hoffman, on the other hand, and [by] failing to act to obtain and preserve critical rights of Better Nutritionals and Sharon Hoffman, DLA Piper failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession, and therefore constitutes malpractice." TAC ¶ 165.

With respect to his breach of fiduciary claim, Hoffman alleges that "DLA Piper breached its fiduciary duties to Better Nutritionals and Sharon Hoffman when acting as counsel for Goli, on the one hand, and Better Nutritionals and Sharon Hoffman, on the other hand, by placing the interests of Goli above the interests of Better Nutritionals and Sharon Hoffman and failing to act to obtain and preserve critical rights of Better Nutritionals and Sharon Hoffman." Id. ¶ 169.

Hoffman generally alleges that "[i]n the negotiation of [the stock-swap agreements], … Ishmael, the DLA Piper Partner in charge of that firm's engagement by Better Nutritionals, was working behind the scenes to advance only the interests of Goli." Id. ¶ 76 (emphasis omitted). Hoffman further alleges that "[he] and Odelya [Hoffman] relied upon the legal advice of DLA Piper, who represented Sharon Hoffman and Better Nutritionals, in the negotiation and drafting of the Better Nutritionals Operating Agreement [contained within the stock-swap agreements] despite the obvious conflicts of interest from DLA Piper's past and ongoing representation of Goli[] and its principals Agarwal and Bitensky." Id. ¶ 90. Hoffman alleges that "DLA Piper acted only in the

interests of Goli and its principals, and abandoned any duty as counsel to Sharon, Odelya and Better Nutritionals.” Id.

1. The Parties’ Arguments

DLA argues that both of Hoffman’s claims are time-barred because “[u]nder California law, a malpractice or fiduciary duty claim based on the allegation that an attorney deficiently negotiated a contract—like Hoffman’s claims here—accrues as soon as the client signs the contract. Hoffman’s claims thus accrued on December 10, 2020 (when he signed the stock-swap contracts) and expired by December 10, 2021—long before Hoffman brought this suit [on August 11, 2023].” Id. at 6. DLA argues that California Code of Civil Procedure Section 340.6 imposes a one-year statute of limitations on claims against an attorney arising from the attorney’s “performance of professional services,” and governs both malpractice and fiduciary duty claims. Id. at 6. DLA further argues that “where, as here, a plaintiff’s claims against an attorney are based on allegedly ‘[n]egligent legal advice which induce[d] [the plaintiff] to enter into a binding contract,’ the one-year limitations period begins ‘at the point of entry’ into the contract.” Id. at 7 (quoting Hensley v. Caietti, 13 Cal. App. 4th 1165, 1175 (1993)). DLA argues that because Hoffman signed the stock-swap agreements on December 10, 2020, Hoffman had until December 10, 2021 to file claims for legal malpractice and breach of fiduciary duty against DLA; however, Hoffman failed to file suit until August 11, 2023. Id. at 8-9. In other words, DLA argues that as soon as Hoffman signed the stock-swap contracts on December 10, 2021, he knew all the relevant facts that provided him with “actual and constructive knowledge to begin the running of the statute of limitations.” Id. at 10.

DLA also argues that even if the statute of limitations did not begin to run until Hoffman subjectively believed he suffered harm, the undisputed record shows his claims are time barred because Hoffman testified that, as early as August 2021, he “realized that the stock swap agreement had some problematic provisions in it,” including provisions that he is now suing DLA over, and that by February 2022, he was actively seeking to reverse the transaction because, among other things, “there were provisions in the 2020 contracts that [he] didn’t like.” Id. at 9. DLA argues that “[t]here is … no genuine dispute that Hoffman believed the stock-swap contracts—including the specific provisions he now complains about—were unfavorable well over a year before he filed suit in August 2023.” Id. DLA argues that Hoffman’s claims against it are not tolled due

to the “continuous representation” doctrine, which applies only where the attorney “continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred”; DLA argues that here, however, because Hoffman alleges that DLA deficiently negotiated an agreement, the “specific subject matter” is the negotiation of that agreement which “necessarily ends when that agreement is executed.” Id. at 9-10 (citing cases).

In opposition, Hoffman argues that there is a triable issue as to whether the statute of limitations for Hoffman’s legal malpractice claim and breach of fiduciary duty claim has run. Opp. at 15. Hoffman argues that “[he] could not have known, at the moment of signing the December 10, 2020, agreements, that DLA’s specific legal work in the preceding weeks was deficient, because the harm from any alleged malpractice was not reasonably apparent from the face of the agreement alone.” Id. at 17. Hoffman argues that “[his] August 2021 realization that certain provisions were problematic and his February 2022 efforts to renegotiate reflect dissatisfaction with the deal’s business outcome, not necessarily knowledge that DLA’s legal representation was the cause of those provisions being included.” Id. at 18. He further argues that “the March 2022 amendment [he] negotiated directly with Goli could itself be evidence that [he] was still attempting to mitigate harm from the original transaction, not that he had fully discovered and quantified DLA’s role in causing that harm.” Id. Hoffman argues that in some circumstances, a plaintiff may suffer actual injury after the execution of an agreement that was allegedly the product of an attorney’s wrongful act or omission arising in his performance of professional services. Id. at 19 (citing Callahan v. Gibson, Dunn & Crutcher LLP, 194 Cal. App. 4th 557, 573 (2011)).

Hoffman further argues that “[t]he continuous representation doctrine should toll the limitations period here because DLA’s representation of Hoffman extended beyond the mere execution of the December 10, 2020 agreements.” Id. at 20. Hoffman argues that “[t]he ‘specific subject matter’ of DLA’s representation was not limited to the act of signing the agreements but encompassed the broader stock-swap transaction and the ongoing attorney-client relationship arising from it.” Id. In other words, Hoffman contends that “the question of whether DLA performed any further work in connection with the agreements is a disputed factual issue that should not be resolved on summary judgment,” and that “[i]f DLA continued to advise Hoffman on any aspect of his relationship with Goli or the entities involved in the stock-swap transaction after December 2020, the continuous representation doctrine would toll the limitations period

through the end of that representation.” Id. Hoffman argues that because “there is no definitive evidence offered by [DLA] as to when the relationship between the DLA attorneys and Mr. Hoffman ended,” there is at least a genuine dispute as to whether and when DLA terminated its representation of Sharon Hoffman individually, such that the continuous representation provision of section 340.6 should toll the statute of limitations and preclude summary judgment on Hoffman’s claims against DLA. Id. at 21-22. Hoffman argues that because DLA ceased representing Better Nutritionals only on August 15, 2022—the date DLA sent Better Nutritionals a disengagement letter—the claims that Hoffman filed against DLA on August 11, 2023 (less than a year after the disengagement letter was sent) are timely. Id. at 22.

In reply, DLA argues that Hoffman’s belated discovery of his claims against DLA does not save them from being time-barred because, for purposes of section 340.6, “[i]t is irrelevant that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action”; “[i]nstead, what matters is whether the plaintiff knew, or should have known, ‘of the facts constituting the wrongful act or omission.’” Reply at 5-9 (citing cases). Second, DLA argues that the continuous representation doctrine—which tolls the limitations period—does not apply because DLA’s representation of Hoffman, with respect to the specific subject matter in which DLA’s alleged wrongful act or omission occurred, ended on December 10, 2020—when the stock-swap agreements were signed and the negotiations related to them necessarily concluded. See id. at 9-12.

2. Cal. Civ. Proc. Code § 340.6

Section 340.6 of the California Code of Civil Procedure provides, in relevant part:

> An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first.

Cal. Civ. Proc. Code § 340.6.

Section 340.6 “states two distinct and alternative limitation periods: one year after actual or constructive discovery, or four years after occurrence (the date of the wrongful

act or omission), whichever occurs first.” Radovich v. Locke-Paddon, 35 Cal. App. 4th 946, 966 (1995) (emphases in original). An attorney asserting a statute of limitations defense under section 340.6 “has the burden of proving ... that plaintiff discovered or should have discovered the facts alleged to constitute defendant’s wrongdoing more than one year prior to filing this action.” See Samuels v. Mix, 22 Cal. 4th 1, 8-9 (1999). “[Section 340.6] applies to an action for malpractice as well as breach of fiduciary duty arising out of the performance of an attorney’s professional duties, but it does not apply to actions for fraud.” Prakashpalan v. Engstrom, Lipscomb & Lack, 223 Cal. App. 4th 1105, 1121 (2014).

The one-year limitations period specified in section 340.6 is “triggered by the client’s discovery of ‘the facts constituting the wrongful act or omission,’ not by his discovery that such facts constitute professional negligence, i.e., by discovery that a particular legal theory is applicable based on the known facts.” Croucier v. Chavos, 207 Cal. App. 4th 1138, 1146 (2012) (cleaned up) (citation omitted). “‘It is irrelevant that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action.’” Worton v. Worton, 234 Cal.App.3d 1638, 1650 (1991) (quoting Gutierrez v. Mofid, 39 Cal. 3d 892, 898 (1985)).

Section 340.6 allows the limitations period to be tolled under certain circumstances, including when the “plaintiff has not sustained actual injury” and when the “attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred.” Cal. Civ. Proc. Code §§ 340.6(a)(1), (a)(2). Tolling is expressly disallowed for any reasons not enumerated in § 340.6. Laird v. Blacker, 2 Cal. 4th 606, 618 (1992). Therefore, “[t]o determine whether Plaintiffs’ claims are barred by the one-year statute of limitations, the Court must … answer two questions: (1) when Plaintiffs were put on inquiry notice of the facts giving rise to their claims and (2) whether any of the enumerated bases for equitable tolling apply to Plaintiffs’ claims.” Heldman v. Zerner, No. CV 19-8185-GW-PJWX, 2020 WL 10893174, at *5 (C.D. Cal. Apr. 10, 2020).

Under section 340.6(a)(1), the claim does not accrue until the plaintiff suffers an actual injury. See Callahan v. Gibson, Dunn & Crutcher, 194 Cal. App. 4th 557 (2011).[7]

[7] Claims for legal malpractice are also subject to a four-year statute of repose which does not apply here.

For purposes of section 340.6(a)(1), "[a]ctual injury occurs when the client suffers any loss or injury legally cognizable as damages in a legal malpractice action based on the asserted errors or omissions." Jordache Enters., Inc. v. Brobeck, Phleger & Harrison, 18 Cal. 4th 739, 743 (1998).[8] "[W]hen malpractice results in the loss of a right, remedy, or interest, or in the imposition of a liability, there has been actual injury regardless of whether future events may affect the permanency of the injury or the amount of monetary damages eventually incurred." Foxborough v. Van Atta, 26 Cal. App. 4th 217, 227 (1994).

Section 340.6(a)(2) also provides that the limitations period is "tolled during the time" that the "attorney continues to represent the plaintiff regarding the *specific subject matter* in which the alleged wrongful act or omission occurred." Cal. Civ. Proc. Code § 340.6(a)(2) (emphasis added). "[C]ourts have interpreted 'specific subject matter' very narrowly." Elliott v. Mitsubishi Cement Corp., No. CV 07-03509-AG AJWX, 2008 WL 4286985, at *4 (C.D. Cal. Sept. 15, 2008).

3. Analysis

To determine whether Hoffman's claims against DLA are timely, the Court proceeds to analyze "(1) when [Hoffman] w[as] put on inquiry notice of the facts giving rise to [his] claims and (2) whether any of the enumerated bases for equitable tolling apply to [Hoffman's] claims." Heldman v. Zerner, No. CV 19-8185-GW-PJWX, 2020 WL 10893174, at *5 (C.D. Cal. Apr. 10, 2020).

Both of Hoffman's legal malpractice and breach of fiduciary duty claims against DLA are predicated on the same alleged misconduct by DLA: (1) that DLA "fail[ed] to act to obtain and preserve critical rights of Better Nutritionals and Sharon Hoffman,"

---

[8] The Jordache court noted that "[t]here are no short cut 'bright line' rules for determining actual injury under section 340.6. [Citations.] Instead, actual injury issues require examination of the particular facts of each case in light of the alleged wrongful act or omission." Id. at 766. Moreover, the court noted that "(1) determining actual injury is predominantly a factual inquiry; (2) actual injury may occur without any prior adjudication, judgment, or settlement; (3) nominal damages, speculative harm, and the mere threat of future harm are not actual injury; and (4) the relevant consideration is the fact of damage, not the amount." Id. at 743 (citations omitted).

TAC ¶¶ 165, 169; and (2) that DLA "act[ed] as counsel for Goli, on the one hand, and Better Nutritionals and Sharon Hoffman, on the other hand, [and] plac[ed] the interests of Goli above the interests of Better Nutritionals and Sharon Hoffman." Id. ¶¶ 165, 169. Moreover, both of Hoffman's claims are predicated on alleged misconduct by DLA that necessarily occurred *before* the signing of the stock-swap agreements on December 10, 2020 because there is no evidence suggesting that Hoffman's claims against DLA may be predicated on alleged misconduct by DLA that occurred *after* the stock-swap agreements were signed. This is so because all asserted injuries that form the basis of Hoffman's claims against DLA arise from DLA's alleged failure to adequately represent Hoffman and his interests during negotiations with Goli over the stock-swap agreements and when the stock-swap agreements were finally executed. See Resp. 1 ¶¶ 29-34; Resp. 2 ¶¶ 2, 19-20, 22, 25-26; see also TAC ¶¶ 165, 169, 76, 90.

The Court finds that there is no genuine dispute that Hoffman was put on inquiry notice of the facts constituting his legal malpractice claim against DLA (to the extent that this claim is predicated on the theory that DLA negligently negotiated the terms of the stock-swap agreements) no later than August 2021.[9] In August 2021, Hoffman himself admits that "[he] began to appreciate that certain provisions of the stock-swap agreements were operating against [his] interests," following "a dispute [that] arose [in or around August 2021] regarding Better Nutritionals' ability to offer excess manufacturing capacity to other customers." Hoffman Decl. ¶ 10. Although Hoffman claims that, in August 2021, "[he] did not yet understand that DLA had been negligent in negotiating those provisions or that [he] had legal claims against DLA," id., "[i]t is irrelevant that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action." Worton v. Worton, 234 Cal. App. 3d 1638, 1650 (1991) (quoting (Gutierrez v. Mofid, 39 Cal.3d 892, 898 (1985)). Instead, "[t]he one-year period is triggered by the client's discovery of 'the facts constituting the wrongful act or omission,' not by his discovery that such facts constitute professional negligence." Id. Therefore, the undisputed facts demonstrate that Hoffman, by August 2021, "discover[ed], or through the use of reasonable diligence should have discovered, the facts constituting" his malpractice claim; namely, the fact that DLA had allegedly negligently handled the

[9] Plaintiff claims that the unfavorable final terms of the executed stock-swap agreements were due to DLA's malpractice. TAC ¶ 165. Plaintiff thus claims that by negotiating unfavorable terms, DLA committed malpractice.

negotiation of the terms of the stock-swap agreements to the detriment of Hoffman's interests. Cal. Civ. Proc. Code §§ 340.6(a). Thus, for purposes of triggering the section 340.6 one-year limitations period with respect to Hoffman's malpractice claim, as defined above, Hoffman was put on constructive notice of DLA's alleged wrongful acts no later than August 2021.[10] Unless the one-year limitations period of section 340.6 is tolled, the latest date Hoffman could file such claim against DLA was a year later in September 2022.

The Court further finds that there is no genuine dispute that Hoffman was put on inquiry notice no later than October 28, 2020 of the facts constituting his breach of fiduciary claim against DLA and which form the basis of his legal malpractice claim against DLA on the additional theory that DLA breached its fiduciary duty because of its conflict of interest in representing Goli, a party adverse to Hoffman in the underlying stock-swap agreement negotiations.[11] On October 22, 2020, then-DLA partner Safraz Ishmael advised Hoffman that "because the firm represents both [Better Nutritionals] and Goli, [DLA will] have to figure out conflicts and waivers, if possible, depending on the structure of the deal [i.e., the stock-swap transaction]." Resp. 1 ¶ 17. On October 28,

[10] Even assuming, *arguendo*, that the one-year section 340.6 limitations period for this claim was not triggered on August 2021, the limitations period would have been triggered no later than February 2022, when it is undisputed that Hoffman sought to amend the stock-swap transaction at the recommendation of a third-party financing company who identified "certain structural problems with the agreements that were preventing Better Nutritionals from obtaining financing. …" Resp. 2 ¶ 46; Hoffman Decl. ¶¶ 11. Hoffman then entered into an agreement with Goli in March 2022 that modified the terms of the stock-swap agreements. Resp. 1 ¶ 47. Thus, the undisputed evidence demonstrates that Hoffman "discover[ed] … 'the facts constituting [DLA's alleged] wrongful act or omission'" no later than August 2021, and certainly no later than February 2022, when Hoffman sought to amend the stock-swap transaction that he alleges DLA negligently negotiated. Croucier v. Chavos, 207 Cal. App. 4th 1138, 1146 (2012) (cleaned up) (citation omitted).

[11] Namely, these alleged facts are that DLA represented Hoffman in negotiations over the stock-swap agreements with Goli while DLA was also representing Goli, albeit in unrelated matters, and that as a result, DLA placed the interests of Goli above the interests of Hoffman and Better Nutritionals. TAC ¶ 165, 169.

2020, Ishmael sent Sharon Hoffman an email with the conflict waiver, stating: “As we discussed, below is the conflict waiver agreement. Please review, and if everything looks okay, you can just respond to this email with ‘I agree.’” Id. ¶ 18. The conflict waiver that Ishmael sent to Sharon Hoffman on October 28, 2020 stated that Sharon Hoffman had asked DLA to represent both him and Better Nutritionals in the “Goli Nutrition/Better Nutritionals Investment.” Id. ¶ 19. The conflict waiver also identified the “Counterparty” as “Goli Nutrition Inc., Michael Bitensky, and Deepak Agarwal.” Id. ¶ 20. The waiver also disclosed that “DLA Piper represents Counterparty” in “Various Unrelated Matters” and disclosed that DLA “currently represents, in the past has represented and will continue to represent, the Counterparty in connection with Unrelated Matters.” Id. ¶¶ 21-22. The conflict waiver concluded: “Please indicate [your] agreement and consent to the foregoing matters by reply e-mail. If you have any questions, please do not hesitate to contact me.” Id. ¶ 23. On October 28, 2020, Sharon Hoffman responded to the conflict waiver that Ishmael sent on October 28, 2020, stating, “I agree. Thank you.” Id. ¶ 24. Hoffman read the waiver and did not consult independent counsel before signing it. Id. ¶¶ 25, 27. Therefore, the undisputed facts demonstrate that Hoffman, by October 28, 2020, “discover[ed], or through the use of reasonable diligence should have discovered, the facts constituting” his breach of fiduciary and malpractice claim; namely, the fact that DLA had allegedly deficiently handled the negotiation of the stock-swap agreements to the detriment of Hoffman’s interests because DLA was simultaneously representing Goli (a party adverse to Hoffman in the stock-swap transaction) in “Various Unrelated Matters.” Resp. 1. ¶¶ 21-22; Cal. Civ. Proc. Code § 340.6(a). Thus, for purposes of triggering the section 340.6 limitations period with respect to his breach of fiduciary duty claim and his malpractice claim, as defined above, Hoffman was put on constructive notice of DLA’s allegedly wrongful conduct no later than October 28, 2020. Unless the one-year limitations period of section 340.6 is tolled, the latest date Hoffman could file such claim against DLA was a year later on October 28, 2021.

The Court further finds that there is no basis for tolling the limitations period on either of Hoffman’s claims such that the claims, filed against DLA on August 13, 2023, are timely; thus, Hoffman’s legal malpractice claim and breach of fiduciary duty claim against DLA are time barred.

First, Hoffman’s limitation period was not tolled on the ground that “[Hoffman] has not sustained actual injury.” Cal. Civ. Proc. Code § 340.6(a)(1). As discussed,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O' JS-6**

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-06597-CAS-MAAx | Date | August 6, 2026 |
| Title | Sharon Hoffman et al. v. Goli Nutrition, Inc. et al. | | |

Hoffman alleges that DLA is liable to him for legal malpractice and breach of fiduciary duty under the following two theories: (1) that DLA negligently represented Hoffman in negotiating the terms of the stock-swap agreements with Goli; and (2) that DLA's representation of Hoffman was deficient and conflicted because DLA simultaneously represented Goli, a party adverse to Hoffman, at the same time that DLA represented Hoffman in negotiations with Goli over the stock-swap agreements. See TAC ¶¶ 164-169; Resp. 1 ¶ 63. As discussed, both of Hoffman's claims and theories are predicated on alleged misconduct by DLA that occurred *before* the signing of the stock-swap agreements on December 10, 2020. The relevant inquiry, for purposes of tolling under Cal. Civ. Proc. Code § 340.6(a)(1), is when Hoffman suffered "actual injury" because of DLA's alleged misconduct. For purposes of section 340.6(a)(1), "[a]ctual injury occurs when the client suffers any loss or injury legally cognizable as damages in a legal malpractice action based on the asserted errors or omissions." Jordache Enters., Inc. v. Brobeck, Phleger & Harrison, 18 Cal. 4th 739, 743 (1998). Where a plaintiff's claims against an attorney are based on allegedly "[n]egligent legal advice which induce[d] [the plaintiff] to enter into a binding contract," the limitations period typically begins "at the point of entry" into the contract; this is so because "[e]ntering a contract is a jural act which alters the legal relations of the parties and creates an obligation." Hensley v. Caietti, 13 Cal. App. 4th 1165, 1174, 16 Cal. Rptr. 2d 837 (1993). However, actual injury resulting from legal malpractice may in some circumstances occur later than the date of contract formation where "the specific provisions that adversely impacted the former client of the allegedly negligent attorney[] [a]re [not] effective immediately." Callahan v. Gibson, Dunn & Crutcher LLP, 194 Cal. App. 4th 557, 572 (2011). For example, in Callahan, the California Court of Appeal held that the date of entry of an (allegedly negligently-drafted) partnership agreement did not constitute the date of the plaintiff's actual injury for purposes of triggering the § 340.6 limitations period because the applicability of the partnership agreement was contingent on the occurrence of a certain event (pertaining to the order in which certain parties to the agreement died or became incapacitated) that "created only a potential for harm" that may not "have … ripened into actual injury." See id. at 573-74.

Here, the rule from Hensley—as opposed to that from Callahan[12]—is apposite because there is no genuine dispute that the signing of the stock-swap agreements altered the legal relations of the parties to the agreements effective immediately when they were signed on December 10, 2020. See Resp. 1 ¶¶ 28-40. In other words, the moment the stock swap agreements were signed, "[Hoffman] [allegedly] sustain[ed] actual injury" because "[Hoffman] c[ould then immediately] plead a legal malpractice cause of action." Jordache, 18 Cal. 4th at 756. See also Turley v. Wooldridge, 230 Cal. App. 3d 586, 593 (1991) ("When [plaintiff] signed [a] purportedly unfair [a]greement [that effectuated present transfers of interest in property] on the alleged negligent advice of counsel and thereby rendered it effective, all essential elements of her cause of action for legal malpractice had occurred. There was no justification for tolling the statute of limitations beyond that point."). Under either of Hoffman's two theories underlying his malpractice and breach of fiduciary claims, Hoffman suffered actual injury no later than December 10, 2020. Thus, under Cal. Civ. Proc. Code § 340.6(a)(1), the limitations period on both of Hoffman's claims may be tolled only until December 10, 2020. However, because Hoffman filed suit on August 13, 2023, and because he was put on inquiry notice of his

[12] The Court notes that the California Court of Appeal's decision in Callahan did not cast doubt on the validity of the rule from Hensley or other relevant precedent that supports the Court's conclusion here; the Callahan court distinguished Hensley because the contract at issue in Hensley and "the specific provisions [therein] that adversely impacted the former client of the allegedly negligent attorney[] were *effectively immediately*," as is the case here. Callahan, 194 Cal. App. 4th at 572 (2011) (emphasis added). See also id. at 570 ("Without question, a party's *alteration of its legal position* in reliance on its counsel can constitute actual injury ....") (emphasis added). See also Jordache Enters., Inc. v. Brobeck, Phleger & Harrison, 18 Cal. 4th 739, 750 (1998) ("[A]ctual injury may consist of impairment or diminution, as well as the total loss or extinction, of a right or remedy. … [w]hen malpractice results in the loss of a right, remedy, or interest, or in the imposition of a liability, *there has been actual injury* regardless of whether future events may affect the permanency of the injury or the amount of monetary damages eventually incurred.") (emphasis added) (cleaned up). See also Foxborough v. Van Atta, 26 Cal. App. 4th 217, 227 (1994) ("[Section 340.6] does not depend on the plaintiff's recognizing actual injury. Actual injury must be noticeable, but the language of the tolling provision does not require that it be noticed.").

claims against DLA more than a year before August 13, 2023, tolling under Cal. Civ. Proc. Code § 340.6(a)(1) does not preserve the timeliness of his claims.

Second, Hoffman’s claims may not be tolled to preserve their timeliness on grounds that DLA “continue[d] to represent [Hoffman] regarding the specific subject matter in which the alleged wrongful act or omission occurred.” Cal. Civ. Proc. Code § 340.6(a)(2). Section 340.6 allows the limitations period to be “tolled during the time” that the “attorney continues to represent the plaintiff regarding the *specific subject matter* in which the alleged wrongful act or omission occurred.” Cal. Civ. Proc. Code § 340.6 (emphasis added). “[C]ourts have interpreted ‘specific subject matter’ very narrowly.” Elliott v. Mitsubishi Cement Corp., No. CV 07-03509-AG AJWX, 2008 WL 4286985, at *4 (C.D. Cal. Sept. 15, 2008). Furthermore:

> The continuous representation rule, as codified in section 340.6, subdivision (a), is not triggered by the mere existence of an attorney-client relationship. Instead, the statute’s tolling language addresses a particular phase of such a relationship—representation regarding a specific subject matter. Moreover, the limitations period is not tolled when an attorney’s subsequent role is only tangentially related to the legal representation the attorney provided to the plaintiff.

Pension Tr. Fund for Operating Eng’rs Loc. 3 v. McMorgan & Co., No. CIV. S-06-904 WBS JF, 2007 WL 201247, at *9 (E.D. Cal. Jan. 24, 2007) (quoting Foxborough v. Van Atta, 26 Cal.App.4th 217, 228-29 (1994)).

Here, there is no dispute that the specific subject matter in which DLA’s alleged wrongful act or omission occurred pertains to the stock-swap transaction (“the specific subject matter”).[13] All of Hoffman’s alleged injuries stem from DLA’s alleged wrongful conduct in relation to the negotiation and execution of the stock-swap agreements, and no evidence suggests otherwise. Moreover, there is no genuine dispute that “DLA did not

[13] DLA appears to argue that the specific subject matter at issue is the negotiation and execution of the stock-swap agreements to the exclusion of any post-agreement legal work. See Reply at 9-10. However, viewing the facts in the light most favorable to plaintiffs, the nonmoving parties, the Court finds the specific subject matter at issue to encompass legal work that DLA may have done for Hoffman relating to the agreements even after they were executed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O' JS-6**

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-06597-CAS-MAAx | Date | August 6, 2026 |
| Title | Sharon Hoffman et al. v. Goli Nutrition, Inc. et al. | | |

perform any legal work for Sharon Hoffman in connection with the stock-swap transaction at any point after 2021." Resp. 1 ¶¶ 41. This fact is undisputed because plaintiffs have set forth no evidence contesting this admitted fact[14]; plaintiffs merely object to the fact on evidentiary grounds which are meritless.[15]

---

[14] The contention by DLA that "DLA did not perform any legal work for Sharon Hoffman in connection with the stock-swap transaction at any point after 2021" is supported by DLA's request for admission no. 38 to plaintiff Sharon Hoffman, dated August 29, 2025, which states: "Admit that DLA Piper did not represent You personally in connection with the Stock Swap Transaction in 2022 or anytime thereafter." Dkt. 489-10, Nowicki Decl. Ex. 10 (DLA's requests for admission to Sharon Hoffman) at 9. On September 29, 2025, plaintiffs responded "Admit" to DLA's request for admission no. 38. Dkt. 489-11, Nowicki Decl. Ex. 11 (Plaintiffs' response to DLA's requests for admission) at 2. Given this admission, the fact that "DLA did not perform any legal work for Sharon Hoffman in connection with the stock-swap transaction at any point after 2021" is undisputed.

[15] Plaintiffs object to the evidence supporting this fact on several evidentiary grounds: (1) "DLA's Requests for Admission are not independently admissible evidence"; (2) "[t]he requests themselves have no evidentiary value absent Plaintiffs' admissions in response thereto"; (3) "the RFAs contain assertions of fact or law … [and] constitute out-of-court statements by a party and legal conclusions that are not proper evidence on summary judgment"; and (4) the "[RFA] exhibit is misleading" "[t]o the extent DLA relies on selected responses without providing the full context of the qualifying language, explanations, or objections included therein." Dkt. 496-2. Each of these objections is meritless and is overruled. First, "admissions to requests for admissions can be used as evidence in motions for summary judgment." Hartford Underwriters Ins. Co. v. Jobber's Wholesale, Inc., No. CV147522JFWMRWX, 2015 WL 12765462, at *3 (C.D. Cal. July 13, 2015). Second, the fact asserted in DLA's request for admission no. 38 has evidentiary value because the fact *was* admitted by Hoffman when plaintiffs filed their response to DLA's requests for admission. Dkt. 489-11 at 2. Third, "[d]ocuments produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent." Welenco, Inc. v. Corbell, 126 F. Supp. 3d 1154, 1163 (E.D. Cal. 2015); See also Fed. R. Evid. 801(d)(2)(A). Fourth, nothing about DLA's presentation of its

Plaintiffs suggest that because DLA may have engaged in “post-closing work” for plaintiffs pertaining to the stock-swap agreements, the limitations period for Hoffman’s claims should be tolled to preserve the timeliness of Hoffman’s claims. See Opp. at 22. Plaintiffs argue that their expert, Joel Osman, “specifically opines that there is a genuine dispute regarding whether DLA’s representation extended beyond the closing [of the stock-swap transaction] and whether DLA continued representing Plaintiffs concerning matters arising from the [stock-swap] transaction and its consequences.” Id. at 22-23. However, neither plaintiffs nor Osman presents any evidence that DLA engaged in “post-closing work” for DLA pertaining to the stock-swap agreements at any point after 2021. Accordingly, this fact is not genuinely disputed. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992) (“In response to a summary judgment motion, … the plaintiff can no longer rest on such ‘mere allegations,’ but must ‘set forth’ by affidavit or other evidence ‘specific facts,’ Fed.Rule Civ.Proc. 56(e) ….”).

Plaintiffs also argue that because DLA “never clearly terminated its representation of Sharon Hoffman individually,” Hoffman’s claims against DLA are not time barred under the “continuous representation” provision. Id. at 22. This argument is meritless. That Hoffman never received or signed a disengagement letter does not change the undisputed fact that DLA did not “continue[] to represent [Hoffman] regarding the specific subject matter” at any point after 2021. See Cal. Civ. Proc. Code § 340.6. See Nguyen v. Ford, 49 Cal. App. 5th 1, 13 (2020) (“[W]hether termination of representation has ended for purposes of section 340.6(a)(2) does not depend on whether the attorney has formally withdrawn from representation, such as by securing a court order granting permission to withdraw. Section 340.6(a)(2) contains no such requirement, and courts have been unwilling to add language to the statute it does not contain.”). Rather, “[t]o determine whether the continuous representation exception applies, the inquiry is not whether an attorney-client relationship still exists but when the representation of the specific matter terminated.” Id. at 12. Tolling ends when “a client has no reasonable

requests for admission and Hoffman’s responses thereto is misleading; DLA’s exhibits contain the entirety of its requests for admission to Sharon Hoffman and the entirety of Hoffman’s responses thereto. Dkt. 489-10; Dkt. 489-11. In short, all of plaintiffs’ objections to DLA’s evidence in support of the undisputed fact that “DLA did not perform any legal work for Sharon Hoffman in connection with the stock-swap transaction at any point after 2021,” are meritless and overruled.

expectation that the attorney will provide further legal services." Id. at 14 (internal quotation marks and citation omitted). "Continuity of representation ultimately depends, not on the client's subjective beliefs, but rather on *evidence of an ongoing mutual relationship and of activities in furtherance of the relationship*." GoTek Energy, Inc. v. SoCal IP L. Grp., LLP, 3 Cal. App. 5th 1240, 1247–48 (2016) (emphasis added) (citation omitted). Although determining whether the continuous representation exception applies to toll the statute of limitations is generally a question of fact, it "can be decided as a question of law if the undisputed facts can support only one conclusion." Nguyen, 49 Cal. App. 5th at 14 (internal quotation marks and citation omitted).

Here, plaintiffs point to *no* evidence that DLA's representation of Hoffman with respect to the stock-swap agreements continued at any point after 2021, such that Hoffman could have reasonably expected that DLA would thereafter provide further legal services with respect to the stock-swap agreements. See id. at 15 (upholding the attorney's demurrer to plaintiff's legal malpractice claim where, as here, "[plaintiff] … d[id] not assert any ongoing legal contacts with [legal counsel] related to the matter" and did not allege that "[plaintiff] continued to communicate with [counsel] about the [matter]"). Rather, the undisputed record demonstrates that "DLA did not perform any legal work for Sharon Hoffman in connection with the stock-swap transaction at any point after 2021," Resp. 1 ¶¶ 41, and that Hoffman agreed, when he retained DLA, that "[DLA's] representation of [Sharon Hoffman and Better Nutritionals] *with respect to a particular matter* will terminate upon conclusion of [DLA]'s active involvement *in the matter* (even if the Firm continues active involvement in other matters on [their] behalf)." Dkt. 494-8 at 14 (emphases added). Any dispute as to whether and when DLA terminated its representation of Hoffman generally or with respect to *other* matters is not relevant for purposes of tolling pursuant to section 340.6's continuous representation provision, which "is not triggered by the mere existence of an attorney-client relationship." Foxborough, 26 Cal. App. 4th at 228-29.

DLA's August 15, 2022 "Dis-engagement Letter" addressed to Better Nutritionals, Dkt. 494-8, does not support Hoffman's argument that August 15, 2022 is the date from which the statute of limitations on Hoffman's claims ran. This "Dis-engagement Letter" upon which Hoffman relies, on its face, relates to DLA's separate representation of Better Nutritionals and does not relate to DLA's representation of Hoffman in connection with the stock-swap transaction. Id. 494-8 at 3 ("I am writing to confirm that, pursuant to your directions, [DLA's] representation of Better Nutritionals, LLC with respect to the

Alarcon v. Better Nutritionals employee lawsuit has terminated, effective May 24, 2022."). Hoffman points to *no* evidence that DLA's representation of Hoffman with respect to the stock-swap agreements continued at any point after 2021.

Given that Hoffman was put on inquiry notice of his claims against DLA in or before August 2021, and given the undisputed fact that DLA did not represent Hoffman in connection with the stock-swap transaction at any point after 2021, the latest date that Hoffman's claims could be timely filed would be the end of 2022, pursuant to the "continuous representation" provision of section 340.6(a)(2). See Lantzy v. Centex Homes, 31 Cal. 4th 363, 370 (2003) (holding that in the context of equitable tolling, "the limitations period *stops running* during the tolling event[] and begins to run again only when the tolling event has concluded"). Because it is undisputed that Hoffman did not file his legal malpractice and breach of fiduciary duty claims against DLA until August 11, 2023, his claims are time barred.

DLA is entitled to summary judgment on both of Hoffman's claims because, pursuant to section 340.6(a), there is no genuine dispute that Hoffman filed such claims after the one-year limitations period had expired and because there is no basis for tolling the limitations period such that his claims are timely. The Court need not address the parties' arguments regarding the merits of Hoffman's claims against DLA. See Villarreal v. Am. Med. Sys., Inc., No. CV201641PSGPLAX, 2020 WL 4390372, at *2 (C.D. Cal. May 6, 2020) ("Because the Court holds that the statute of limitations bars Plaintiff's claims, it does not reach the merits.").

### B. DLA's Motion for Sanctions

On October 31, 2023, DLA Piper LLP (US) ("DLA") filed a motion for sanctions against plaintiffs' counsel, Max Folkenflik of Folkenflik & McGerity LLP and Leonard M. Shulman of Shulman Bastian Friedman & Bui LLP ("Shulman Bastian"), under Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") for the filing of plaintiffs' complaint. Dkt. 22. On December 9, 2023, Folkenflik & McGerity LLP, on behalf of plaintiffs, filed an opposition to DLA's motion for sanctions. Dkt. 57. On December 22, 2023, DLA filed a reply. Dkt. 67.

On January 17, 2024, the Court denied DLA's motion for sanctions and reserved judgment on sanctions for decision at the conclusion of the case. Dkt. 81 at 26.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O' JS-6**

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-06597-CAS-MAAx | Date | August 6, 2026 |
| Title | Sharon Hoffman et al. v. Goli Nutrition, Inc. et al. | | |

On October 1, 2024, Shulman Bastian filed a motion to withdraw as local counsel for plaintiffs. Dkt. 152. On October 30, 2024, the Court granted Shulman Bastian's motion to withdraw. Dkt. 172.

Based on Dkt. 475 (described above in the introduction) and the Court's current ruling granting summary judgment in favor of DLA, it appears that all pending matters have been resolved, and that this case should be closed. Having carefully considered the parties' arguments and submissions, the Court denies DLA's motion for sanctions, Dkt. 22.

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** DLA Piper LLP (US)'s motion for summary judgment on plaintiff Sharon Hoffman's legal malpractice and breach of fiduciary duty claims against DLA, Dkt. 488.

The Court **DENIES** DLA's motion for sanctions, Dkt. 22.

DLA is dismissed from this action, with prejudice.

IT IS SO ORDERED.

| | | |
|---|---|---|
| | 00 | : 00 |
| Initials of Preparer | CMJ | |